**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MENSHACK NYEPAH, | : | HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| WARDEN TREVONZA BOBBITT, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:20-CV-3206-SDG-CMS |

**UNITED STATES MAGISTRATE JUDGE'S ORDER
AND FINAL REPORT AND RECOMMENDATION**

Petitioner, Menshack Nyepah, challenges via 28 U.S.C. § 2254 his January 2013 Rockdale County convictions. [Doc. 1-3; see also Doc. 13-5 at 66-69]. The matter is before the Court on the petition [Doc. 1-3], Respondent's answer-response [Doc. 10], Petitioner's reply [Doc. 15], Petitioner's motion to place certain documents in the record [Doc. 21], Petitioner's second motion to appoint counsel [id.], Petitioner's third motion to appoint counsel [Doc. 22], and Respondent's response in opposition to Petitioner's third motion to appoint counsel [Doc. 24].

# I.   **Background**

Based on the December 23, 2010 armed robbery of Georgia's Own Credit Union, in Rockdale County, Georgia, the Rockdale County grand jury indicted

Petitioner and two co-defendants on two counts of armed robbery, twenty counts of aggravated assault, twenty counts of false imprisonment, and three counts of possessing a firearm during the commission of a crime, case number 2011-CR-1311I. [Doc. 13-5 at 15-62]. On January 23, 2013, represented by Max D. Hirsh, Petitioner entered a non-negotiated guilty plea to all counts except the firearm counts. [See id. at 63-64, 100, 170].[1] At the guilty plea hearing, following an examination of Petitioner under oath, the court accepted his guilty plea. [Id. at 122].

On January 24, 2013, the court imposed a fifty-year sentence, with twenty-five years to be served in confinement and the remainder on probation. [Id. at 68]. On March 18, 2013, Petitioner filed a motion to withdraw his guilty plea. [Id. at 71]. James Steven Purvis was appointed to represent Petitioner. [See id. at 88, 170]. On February 17, 2014, following a hearing at which Mr. Purvis argued ineffective assistance by plea counsel Hirsh, the court denied the motion. [Id. at 88-90, 168-81].

_____

[1] The record contains no plea agreement between Petitioner and the state, and, in pleading guilty, Petitioner agreed that he could be sentenced up to life and that the court was not bound by any sentencing recommendation by the state. [Doc. 13-5 at 63]. The plea hearing commenced with the state announcing that the parties were before the court to enter a non-negotiated plea [id. at 100], and it appears that references to the plea as a negotiated plea are scriveners errors. [See Doc. 13-4 at 171; Doc. 13-5 at 66].

On August 14, 2014, the Georgia Court of Appeals dismissed as untimely and for lack of jurisdiction Petitioner's appeal from the February 17, 2014 denial of his motion to withdraw his guilty plea, appeal number A14A2097. [Doc. 13-1].

In October 2014, Petitioner filed a state habeas corpus petition, as amended, in Chattooga County Superior Court, civil action number 2014CA40407. [Doc. 13-4 at 39-49, 69-73, 81-87]. The action was transferred in May 2015 to the Superior Court of Mitchell County, civil action number 15-V-170, and was transferred in August 2015 to the Superior Court of Telfair County, file number 15-CH-044 . [Id. at 3, 21, 23, 171].

On October 24, 2015, the trial court granted Petitioner's motion for an out-of-time appeal. [See Doc. 13-2 at 1-2]. Petitioner raised two issues on appeal: (1) the disparity between Petitioner's and his co-defendants' sentences was a manifest injustice and (2) the evidence was insufficient to support his convictions. [Id. at 2]. On January 26, 2017, the Georgia Court of Appeals considered the appeal and affirmed the judgment against Petitioner, appeal number A17A0831. [Id. at 2-3].[2]

_____

[2] At some point, Petitioner also filed a motion to set aside a void judgment, which was denied, and on October 30, 2019, the Georgia Court of Appeals dismissed

After the resolution of Petitioner's direct appeal, a hearing on his state habeas corpus petition was held on June 12, 2017 in the Superior Court of Telfair County. [Doc. 13-5 at 1-13]. By order filed on August 29, 2019, the Superior Court of Telfair County denied relief. [Doc. 13-4 at 171-85].

Petitioner appealed, and his notice of appeal, dated September 10, 2019, was returned to Petitioner for a correction and subsequently was returned by Petitioner and filed on October 2, 2019. [Doc. 13-4 at 1, 204-05]. Petitioner's application for a certificate of probable cause to appeal (CPC application) was timely filed in the Georgia Supreme Court, case number S20H0230. [Doc. 13-6 at 22; Doc. 13-7]. On May 4, 2020, the Georgia Supreme Court found that Petitioner had failed to comply with O.C.G.A. § 9-14-52(b) (requiring both a timely notice of appeal and CPC application) and dismissed his case. [Doc. 13-7]. Petitioner moved for reconsideration, and, on June 1, 2020, the Georgia Supreme Court denied his motion. [Doc. 13-8].

---

his appeal for lack of jurisdiction, appeal number A20D0137. [Doc. 15 at 98]. In December 2019, the Georgia Court of Appeals denied Petitioner an extension of time in which to seek reconsideration and denied other motions as moot. [Doc. 16 at 21-22].

4

Petitioner now seeks federal relief and raises fourteen grounds. [Doc. 1-3 at 1-34].

## II.   **Standard**

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). The opportunity for federal relief, however, is limited. The Antiterrorism and Effective Death Penalty Act (AEDPA), requires a petitioner to exhaust his state court remedies and requires federal courts to give deference to state court adjudications. 28 U.S.C. § 2254(b)-(e).

Exhaustion requires a petitioner to "fairly present[] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010)). If a state prisoner has not properly availed himself of state remedies, federal habeas corpus review of his claims generally is barred (1) if, based on adequate and independent state law, the state court clearly and expressly has found that, because the petitioner failed to follow state rules, state law procedurally bars consideration of a claim, or (2) if a claim has not been raised in state court and it is clear that the state courts would refuse, because

5

of a state procedural bar, to allow any further attempts at exhaustion. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999). The federal bar may be overcome if the federal petitioner shows (1) cause for the default and actual prejudice or (2) proof of actual innocence. Ward v. Hall, 592 F.3d 1144, 1157 (2010). "To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court" or that the matter was not raised because of ineffective assistance of counsel.[3] Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). If a petitioner shows cause, he also must show prejudice – an actual and substantial disadvantage to his defense. Id. A petitioner also may avoid a procedural bar through a showing of actual innocence, "but only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner.'" Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) (quoting McQuiggin v. Perkins, 569 U.S. 383, 395 (2013)).

For claims that have been exhausted, federal relief under the AEDPA is limited to petitioners who demonstrate that the state court adjudication resulted in a decision

---

[3] Ineffective assistance of counsel may provide cause for a state procedural default if the assistance was ineffective and the ineffective counsel claim is, itself, fully exhausted and not procedurally defaulted. Ward, 592 F.3d at 1157.

that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).  A state court's factual determinations are presumed correct unless the petitioner presents clear and convincing evidence that those determinations were erroneous.  28 U.S.C. § 2254(e)(1).

In sum, the availability of collateral relief is limited, and the habeas petitioner – now presumed guilty, not innocent – bears the burden of demonstrating his or her right to collateral relief.  See Ross v. Moffitt, 417 U.S. 600, 610-11 (1974) (stating that a person once convicted is deemed guilty and "stripped of his presumption of innocence"); Blankenship v. Hall, 542 F.3d 1253, 1274 (11th Cir. 2008) (stating that "in habeas proceedings . . . the petitioner bears the burden of establishing his right to relief").

This Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved.  A federal evidentiary hearing is not required.  See 28 U.S.C. § 2254(e)(2).

7

### III.    **Discussion**

As set forth by the state habeas court, Petitioner raised the following nine grounds for relief in his state habeas corpus proceedings.

1. Counsel was ineffective for failing to ensure that Petitioner's <u>Boykin</u>[4] rights were read to him in open court as established by the United States Supreme Court in <u>Boykin</u>: (1) the privilege against self-incrimination at trial, (2) the right to a jury trial, and (3) the right to confront one's accusers;

2. Petitioner was not advised of his <u>Boykin</u> rights rendering his guilty plea invalid;

3. The State failed to establish that Petitioner's guilty plea was made voluntarily, knowingly, and intelligently where the record fails to show any comment that Petitioner would be waiving his privilege against compulsory self-incrimination by pleading guilty;

4. Counsel failed to explain to Petitioner the consequences of entering a non-negotiated guilty plea;

5. Petitioner's guilty plea was the result of prosecutorial misconduct and was induced by the promises and representations made by the prosecution;

6. Counsel and the trial court misled Petitioner regarding his parole eligibility;

7. A conflict of interest existed between counsel and Petitioner;

8. Trial counsel was ineffective for failing to investigate the case, failing to meet with Petitioner, and by pressuring Petitioner to enter a guilty plea;

---

[4] <u>Boykin v. Alabama</u>, 395 U.S. 238, 242-43 (1969) (holding that there must be an effective waiver of the constitutional rights on the privilege against compulsory self-incrimination, to a trial by jury, and to confront one's accusers).

9.  Petitioner's sentence constituted cruel and unusual punishment that is grossly disproportionate to the crime committed.

[Doc. 13-4 at 172].[5]

As indicated above, the state habeas court denied relief on August 29, 2019, and Petitioner appealed.  Petitioner's notice of appeal, dated September 10, 2019, was returned to Petitioner on September 20, 2019 for a correction on the case number[6] and subsequently was returned by Petitioner and filed on October 2, 2019 (the notice filed on October 2, 2019, has a corrected case number but is otherwise the same as the original notice and is also dated September 10, 2019).  [Doc. 13-4 at 1, 204-05].  As indicated earlier, on May 4, 2020, the Georgia Supreme Court found that Petitioner's CPC application was timely but that he had failed to comply with O.C.G.A. § 9-14-52(b) (requiring both a timely notice of appeal and CPC

─────────────────

[5] In his CPC application seeking review of the state habeas court's decision, Petitioner expressed no disagreement with the state habeas court's statement of his grounds for relief.  [See Doc. 13-6].

[6] In the style of the case on his initial notice of appeal, Petitioner incorrectly stated the case number as 15-CH-055 instead of 15-CH-044; although he correctly identified the case number in body of the notice of appeal.  [See Doc. 13-4 at 205].

9

application) and dismissed his case, and, on June 1, 2020, it denied reconsideration. [Docs. 13-7, 13-8].

Petitioner now seeks federal relief and raises the following fourteen grounds: (1) the plea was unknowing and involuntary because Petitioner received a harsher sentence than agreed to by the state and the trial court erred in sentencing Petitioner without informing him that he could withdraw his plea (arguably raised in state ground five); [Doc. 1-3 at 1-2]; (2) the trial court erred in finding Petitioner guilty on charges of aggravated assault and false imprisonment when there was no factual basis for the charges and plea counsel was ineffective on the issue (new) [id. at 2-3]; (3) Petitioner's plea was unknowing based on ineffective assistance by plea counsel for inaccurately advising him on parole eligibility and based on the trial court misinforming him on parole eligibility (raised in state ground six) [id. at 3-4]; (4) the trial court erred when it refused to let plea counsel proffer a certain statement by co-defendant (new) [id. at 5-6]; (5) plea counsel was ineffective for failing to inform Petitioner of the consequences of pleading guilty to false imprisonment, which would involve being labeled as a sex offender (new) [id. at 6-7]; (6) the trial court erred in sentencing him to a split sentence of fifty years, with twenty-five years to be served in confinement and the remainder on probation, which "was indeed a some [sic] total

of 55 years" (new) [id. at 7-9]; (7) plea counsel was ineffective for failing to object to admission of other-acts evidence during the plea proceeding (new) [id. at 9-10]; (8) the trial court and the prosecutor failed to make Petitioner adequately aware of the mandatory minimum and maximum sentences for aggravated assault and false imprisonment (new) [id. at 10]; (9) plea counsel was ineffective for failing to inform him of a plea offer (new) [id. at 10-11]; (10) the trial court failed to establish personal and subject-matter jurisdiction over Petitioner, a matter Petitioner contends that he may raise at any time (new)[7] [id. at 12-24]; (11) the trial court erred in failing to

---

[7] As discussed further below, this ground has been procedurally defaulted. Further, a claim that a state court judgment is void because the state court lacked jurisdiction is not excepted from federal rules on procedural default. See Beaulieu v. Minnesota, 583 F.3d 570, 574 (8th Cir. 2009) ("Whether Minnesota had jurisdiction of [the petitioner's] claim was a matter for the Minnesota courts to address. [The petitioner] misapprehends the nature of federal habeas review, and we hold that his subject matter jurisdiction claim does not preclude a finding of procedural default."); Ball v. Jones, 113CV01725RDPJHE, 2016 WL 4157369, at *3 (N.D. Ala. June 7, 2016), ("[T]he fact that a double-jeopardy claim is sometimes deemed, under state law, to implicate the jurisdiction of the state court does not, in turn, implicate the jurisdiction of this Court and, therefore, does not affect the question of whether the petitioner's federal claim is procedurally defaulted in federal court."), report and recommendation adopted, 2016 WL 4095981 (N.D. Ala. Aug. 2, 2016); cf. Williams v. United States, 383 F. App'x 927, 929-30 (11th Cir. 2010) (holding that jurisdictional claim is subject to one-year limitations period under 28 U.S.C. §2255(f)); Jones-Bey v. Alabama, No. 2:14-cv-00376-AKK-HGD, 2014 WL

11

merge, for sentencing purposes, the aggravated assault convictions (in counts three to twenty-two) with the armed robbery convictions (in counts one and two) (new) [id. at 24-25]; (12) plea counsel was ineffective for not seeking an order on the general demurrer to the indictment that he had filed (new) [id. at 25-29]; (13) the armed robbery counts should have quashed as the robbery involved a bank, under the jurisdiction of the United States, not the State of Georgia (new) [id. at 29-31]; and (14) the trial court erred in failing to hold a competency hearing when it knew that Petitioner had undergone psychiatric evaluation after serving a tour of duty with the United States Army (new) [id. at 32-34].[8]

Respondent asserts that all claims are procedurally defaulted. Respondent argues that grounds one and three are procedurally defaulted because Petitioner's CPC application was dismissed for failure to comply with state law requirements and

_____

1233826, at *2 (N.D. Ala. March 25, 2014) ("There is no exception under AEDPA's statute of limitation for a § 2254 claim that the state court lacked jurisdiction.").

[8] The Court notes that Petitioner's procedural competency claim – that the trial court should have held a competency hearing – is subject to the rules on procedural default. See Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005) (stating that a claim that the trial court should have held a competency hearing is a procedural competency claim that is subject to procedural default); Medina v. Singletary, 59 F.3d 1095, 1111 (11th Cir. 1995) (same).

that grounds one and three provide no basis for relief.   [Doc. 10-1 at 9-12]. Respondent argues that the remaining grounds are procedurally defaulted because they are new, that Petitioner fails to show cause and prejudice to overcome his default, and that the Court should deny relief thereon.   [Id. at 12-17].

In his reply, Petitioner contends that in seeking reconsideration from the Georgia Supreme Court's dismissal of his CPC application, he explained to that court that his notice of appeal was untimely "because of no fault of his own, or a lack of due diligence, but because his prison [facility] did not mail his C.O.A.[] on the date he deposited that notice in institutional mail, September 27, 2019, the same date it was given to me[.]"   [Doc. 15 at 6-7].[9]

### A.   Grounds One and Three

Petitioner's CPC application was dismissed by the Georgia Supreme Court for failure to file a timely notice of appeal from the state habeas court's final order, and the Georgia Supreme Court has denied reconsideration.   Absent complete exhaustion,

---

[9] Petitioner has submitted 118 pages in reply, including a thirty-eight page brief in reply.   [Doc. 15].   Petitioner did not obtain prior permission from the Court to exceed the twenty-five page limit for his response, LR 7.1((D), NDGa., and the Court has considered the first twenty-five pages of the brief.   [Doc. 15 at 2-26].

Petitioner has procedurally defaulted his ground one and three claims raised in his state habeas proceedings.  See Pope v. Rich, 358 F.3d 852, 854 (11th Cir 2004) (holding that claim was procedurally barred when the petitioner had failed to exhaust state remedies by petitioning the Georgia Supreme Court for a certificate of probable cause); see also Daniel v. Warden, 783 F. App'x 1007, 1008 (11th Cir. 2019) ("Because Daniel failed to fairly present his claims to the Supreme Court of Georgia, his claims are unexhausted."), cert. denied, _ U.S. _, 140 S. Ct. 2810 (2020).  To the extent that Petitioner has shown cause for his default (based on his timely attempt to appeal being returned because of a scrivener's error and based on his allegation that he deposited his second attempt in the institutional mail on September 27, 2019),[10] his grounds one and three nevertheless fail because Petitioner fails to show prejudice.

**1.** **Ground One, Validity of Guilty Plea Based on Alleged Agreement with the State**

On January 23, 2013, Petitioner appeared before the court with counsel, and the state announced that they were "before the court to enter a non negotiated plea [.]"

---

[10] See supra n.6.

[Doc. 13-5 at 100].  The state reviewed the evidence against Petitioner, [id. at 100-06], which included the following –

> While one of the co-defendants remained outside, [Petitioner] and the other co-defendant entered the credit union armed with handguns. That co-defendant jumped over the teller counter, pointed his gun at the tellers, and demanded the money. [Petitioner] commanded the lobby area, forcing the credit union patrons, including an elderly man and a young child, to get down on the floor.  [Petitioner] also physically pulled the manager from his office and held a gun to his head, demanding to know where the security tape was kept.   [Petitioner] and his codefendants made off with over $28,000.

[Doc. 13-2 at 2-3].   The state informed the court that it was recommending "a sentence of fifty years to serve twenty-five."[11]  [Doc. 13-5 at 108].

Petitioner was given an opportunity to speak and he fully agreed with the facts as put forth by the prosecution.  Petitioner stated:  "[U]nfortunately everything the District Attorney is saying is true.   What happened on the day of the robbery, everything they are saying is true."  [Id. at 116].  Petitioner did not take issue with

---

[11]  Additionally, in the signed Plea of Guilty/Acknowledgement and Waiver of Rights form, Petitioner agreed that he could be sentenced to up to life for armed robbery and that the court would not be bound by any sentencing recommendation by the state.  [Doc. 13-5 at 63].

15

the fact that he was entering a non-negotiated plea or the state's sentencing recommendation in regard thereto.  [Id. at 116-18].

Under oath, Petitioner acknowledged that he had signed the Plea of Guilty/Acknowledgement and Waiver of Rights form and had initialed his responses thereon.[12]   [Id. at 119-20].   The Court questioned Petitioner on his plea-form responses and in regard to the right to a jury trial, the right to be confronted by the witnesses against him and to cross-examine those witnesses, and the right to bring in witnesses to testify in his defense.  Petitioner affirmed to the court that he understood each of his initialed responses and the rights reviewed by the judge, that he wanted to plead guilty, and that he was not pleading guilty based on any promises or threats. [Id. at 120-22].  The court accepted Petitioner's guilty plea.  [Id. at 122].

---

[12] In those responses, Petitioner stated, *inter alia*, that he understood (1) that he did not have to say, sign, or do anything that would tend to show that he was guilty, unless he wanted to (i.e., his right against self incrimination); (2) that he had the right to be tried by a jury; and (3) that at trial he would have the right to question and cross-examine witnesses under oath.  [Doc. 13-5 at 63].  See Cole v. Warden, Ga. State Prison, 768 F.3d 1150, 1156-57 (11th Cir. 2014) (finding that written plea form, signed by Cole in the presence of his attorney, was sufficient to show that he was informed of his Boykin rights at his plea proceeding).

In his state habeas ground five, Petitioner argued that his guilty plea was the result of prosecutorial misconduct and was induced by the promises and representations made by the prosecution.  [Doc. 13-4 at 172, 179].

The state habeas court reviewed the facts and found as follows –

> Counsel explained to the trial court that Petitioner was reluctant to plea guilty to the charges because the negotiated plea offers involved him testifying against his co-defendant and Petitioner felt a sense of duty to his co-defendant. (HT 113).[13] However, the co-defendant pled guilty prior to trial and received a sentence of ten years.  (HT 113). According to counsel, the prosecutor had allowed Petitioner and co-defendant to confer and Petitioner had encouraged codefendant to accept the plea offer.  (HT 114).  During the plea colloquy, Petitioner affirmed that he was entering the plea freely and voluntarily and was not being coerced. (HT 121-122).

> Petitioner contends that the prosecutor previously informed him and his co-defendant that she would recommend a lenient sentence of ten years to serve if both Petitioner and his codefendant pled.  Counsel explained to the trial court during the plea hearing that Petitioner wanted a ten year sentence for both his co-defendant and him but Petitioner was never offered ten years while his co-defendant was offered and accepted a ten year plea. (HT 114).  Additionally, prior to pleading guilty the nature of a non-negotiated plea was explained to Petitioner and he was informed that the trial court did not have to accept the State's recommendation.  The State announced its recommendation to the court prior to Petitioner's plea of guilty and Petitioner had the opportunity to

---

[13] The habeas transcript cited by the state habeas court is located at docket entry 13-5, and the court's cm/ecf pagination is the same as the habeas transcript pagination cited by the state habeas court.

not enter his plea.  Therefore, Petitioner has failed to show that he was induced to enter a guilty plea by the State's promise of a ten-year sentence or any other representation by the State.

[Doc. 13-4 at 180].  The state habeas court concluded that Petitioner's claim provided no basis for relief.  [Id.].

In this Court, Petitioner argues (1) that his guilty plea was unknowing and involuntary because he received a harsher sentence than the thirty-year (to serve ten) sentence agreed to by the state and (2) that, because a defendant has the right to withdraw his plea under "Rule 33" [14] if the court rejects a negotiated plea, the trial court erred in imposing sentence without informing Petitioner that he could withdraw his plea.  [Doc. 1-3 at 1-2].

Petitioner does not show the existence of a negotiated plea agreement between Petitioner and the state for a thirty-year sentence, and he presents no clear and convincing evidence to bring into question the facts as found by the state habeas court – i.e., that Petitioner had rejected a negotiated offer that would have required him to

---

[14]  Under Georgia law, Uniform Superior Court Rule 33.10, the trial court must inform a defendant if it intends to reject a negotiated plea and inform the defendant that he, accordingly, has the right to withdraw his plea.  James v. State, 326 Ga. App. 231, 231, 756 S.E.2d 312, 313 (2014).

testify against a codefendant and that the nature of the non-negotiated plea had been explained to Petitioner before he pleaded guilty.  There is no evidence that the trial court rejected a negotiated plea, which would trigger a duty to inform on the right to withdraw the plea.  Petitioner pleaded guilty *after* the state articulated on the record that the parties were before the court to enter a non-negotiated guilty plea and that it was recommending a fifty-year sentence.  Further, Petitioner informed the court that he was not pleading guilty based on any promises or threats.  Petitioner fails to show that he was prejudiced because the Georgia Supreme Court dismissed, without review, his CPC application, and he otherwise fails to overcome his default by a showing of actual innocence.  Ground one fails.

2.   **Ground Three, Validity of Guilty Plea Based on Parole Advice**

As indicated earlier, Petitioner sought to withdraw his guilty plea and was represented by Mr. Purvis for those proceedings.  [Doc. 13-5 at 168-81].  At the hearing, it was not mentioned that the plea was invalid based on any pre-plea advice that Petitioner received in regard to parole.  [See id.].[15]  Petitioner was given an

---

[15] Petitioner's *pro se* motion to withdraw his plea also did not mention pre-plea parole advice as a ground for relief.  [Doc. 13-5 at 71].

opportunity to address the court personally when Mr. Purvis asked Petitioner, "do you have anything you'd like to tell the Court about why the Court should reconsider what it did that day?" (the day of the guilty plea). [Id. at 175]. Petitioner responded, but did not mention that he was misled by any pre-plea advice in regard to parole. [Id. at 175-77]. The trial court denied the motion to withdraw the guilty plea. [Id. at 88-90].

In his state habeas ground six, Petitioner argued that his plea counsel and the trial court misled him in regard to his parole eligibility. [See Doc. 13-4 at 172]. The state habeas court reviewed the facts and found as follows.

> Petitioner contends that the trial court misled Petitioner regarding his parole eligibility by stating that Petitioner could be released after serving only ten years. However, Petitioner takes the trial court's statement out of context. After Petitioner had already pled guilty and been informed of the sentencing range and the plea was accepted by the trial court, the trial judge considered sentencing and explained that he did not know how much time Petitioner would serve. (HT 126).[16] Neither the trial court nor counsel made any representations on the record to Petitioner regarding parole eligibility prior to his entry of a guilty plea. Specifically, the trial judge said "And based on how they do things, you may get out . . . after ten years and one day. I have no idea. I really don't." (HT 126). The statement by the trial court was not meant to advise Petitioner of his parole eligibility and was merely a

---

[16] As previously stated, the habeas transcript cited by the state habeas court is located at docket entry 13-5.

statement by the trial judge that while he was sentencing Petitioner to a number of years, he did not know how many Petitioner would actually serve.  As Petitioner had already entered his guilty plea, the statement could not have misled or induced Petitioner into entering his guilty plea.

To the extent that Petitioner alleges that counsel failed to advise him of his parole eligibility, Petitioner has failed to establish that counsel did not actually advise him accurately of his parole eligibility. The details of counsel's discussions with Petitioner are not part of the record and counsel did not testify at the evidentiary hearing.  Therefore, Petitioner has failed to carry his burden of proof that he received ineffective assistance of counsel.   Alternatively, Petitioner has not shown prejudice from the alleged ineffectiveness. The evidence against Petitioner was overwhelming and counsel explained to the trial court that Petitioner's hesitation in accepting a negotiated guilty plea was that he did not want to testify against his co-defendant. (HT 115).  After his co-defendant pled guilty, Petitioner elected to enter a non-negotiated plea.  Therefore, Petitioner has failed to show that, but for the alleged ineffectiveness of counsel, Petitioner would not have pled guilty and would have insisted on trial.

[Id. at 181-82].

In this Court, Petitioner argues that his guilty plea was unknowing based on ineffective assistance by plea counsel for inaccurately advising him on parole eligibility and based on the trial court misinforming him on parole eligibility.  [Doc. 1-3 at 3-4].  In support, Petitioner cites to the plea hearing transcript and partially quotes the trial court's statement, "I know you will do ten.  After that it's all up to the State of Georgia.  Based upon how they do things, you may get out after ten years

21

and one day." [Id. at 3]. Petitioner provides no other record citation in support of ground three. [See id. at 3-4]. Petitioner states that his sentence for armed robbery must be served in full, without reduction by parole,[17] and argues that, if not for counsel's misrepresentation on the issue, he would not have pleaded guilty. [Id. at 3].

Petitioner provides no clear and convincing evidence to bring into question the state habeas court's factual findings, including its factual finding that neither the court nor counsel "made any representations on the record to Petitioner regarding parole eligibility prior to his entry of a guilty plea" and that there was a lack of evidence showing "that counsel did not actually advise him accurately of his parole eligibility." [Doc. 13-4 at 181]. The trial court's statement was *after* the entry of the guilty plea and could not have influenced Petitioner's decision to plead guilty. Therefore, Petitioner fails to show prejudice. Further, there is no evidence or evidentiary proffer that, before the guilty plea, plea counsel advised Petitioner that

_____

[17] Armed robbery is deemed a serious violent felony, and, generally, "any sentence imposed for the first conviction of any serious violent felony shall be served in its entirety as imposed by the sentencing court . . . ." O.C.G.A. § 17-10-6.1(a)(2), (c)(4).

22

he would be eligible for parole after ten years.  Additionally, the state habeas court's

finding on the lack of evidence is borne out by the failure of Petitioner or Petitioner's

counsel to mention at the hearing on the motion to withdraw the guilty plea any pre-

plea advice on parole.  The evidence, at most, shows that counsel did not comment

on the trial court's post-plea statement, which is insufficient to prejudice Petitioner's

earlier decision to plead guilty.  Petitioner fails to show that he was prejudiced

because the Georgia Supreme Court dismissed, without review, his CPC application

and otherwise fails to overcome his default by a showing of actual innocence.

Ground three fails.

### B.    <u>Remaining Grounds Two and Four through Thirteen</u>

Petitioner in his remaining grounds has asserted various claims of trial error

and ineffective assistance by plea counsel.  [Doc. 1-3 at 1-34].  Respondent argues –

> This Court may find the requisite exhaustion of these new claims to arise
> by virtue of their being defaulted under Georgia's successive petition
> rule, O.C.G.A. § 9-14-51.  Petitioner has not shown cause and prejudice
> to overcome the defaults, as he could reasonably have raised these
> claims in his state collateral attack as the factual and legal bases were
> available, and the failure to have raised them then is attributable to him.
> Respondent urges the Court to deny relief on these new but defaulted
> claims.

[Doc. 10-1 at 12-13].

In reply, Petitioner appears to argue that exhaustion should be excused because the factual predicate for his claims could not have been discovered with due diligence and, if proven, would show by clear and convincing evidence that no reasonable fact finder would have found him guilty. [Doc. 15 at 8-9]. Petitioner further argues that ineffective assistance by appellate counsel provides cause for his default. [Id. at 12-15].[18]

Petitioner did not raise the remaining grounds, two and four through fourteen, either on direct appeal or in his state habeas corpus proceedings.[19] Petitioner's claims

_____

[18] Petitioner states that Respondent concedes that his claim of ineffective assistance on appeal is properly exhausted. [Doc. 15 at 14]. However, Respondent's statement that he does not "contest exhaustion in this case," is immediately followed by an assertion of procedural default and a later argument that the defaulted claims should be denied. [Doc. 10 at 8; Doc. 10-1 at 12-13]. The Court does not address this matter further.

[19] It is noted that, because Petitioner was represented by Mr. Purvis in the motion to withdraw his guilty plea and on appeal and his state habeas proceedings were not a first opportunity to present challenges to his conviction and/or plea counsel Hirsh's assistance, his lack of counsel during his state habeas proceedings cannot provide cause for his default. See Martinez v. Ryan, 566 U.S. 1, 11-12 (2012) (holding that lack of counsel or ineffective assistance of counsel in initial state collateral proceeding may provide cause for procedural default of ineffective assistance of trial counsel claims that must be raised for the first time in collateral proceeding). Absent the particular situation outlined in Martinez, the general rule is that the ineffectiveness or lack of collateral counsel cannot provide cause for a

raised for the first time in his federal petition are procedurally defaulted and are subject to the federal bar to review as it is apparent that the state courts would refuse, because of a state procedural bar, to allow any further attempts at exhaustion.  See Bailey, 172 F.3d at 1302-03; see also O.C.G.A. § 9-14-51 (dictating that state petitioner waives grounds that he reasonably could have raised in an original or amended state habeas corpus petition but did not); Black v. Hardin, 255 Ga. 239, 239-40, 336 S.E.2d 754, 754-55 (Ga. 1985) (holding that failure to timely raise claims of trial error at trial "or to pursue the same on appeal" constitutes a procedural default).

Petitioner has not overcome his default by a showing of cause and prejudice or with a credible showing of new evidence of actual innocence.  Although a claim or claims of ineffective assistance by appellate counsel can provide cause, those claims must themselves be exhausted.  Here, Petitioner failed to raise in his state habeas corpus proceedings any claims that counsel was ineffective on appeal.  [See

---

procedural default.  See Mize v. Hall, 532 F.3d 1184, 1191 (11th Cir. 2008) ("Because a petitioner has no right to counsel during state collateral review, even grossly ineffective assistance at the collateral review stage, or no assistance at all, does not constitute cause to excuse a procedural default.").

Doc. 13-4 at 172 (showing no claims that counsel was ineffective on appeal); Doc. 13-5 at 1-12 (raising no claims that counsel was ineffective on appeal)].[20] It is apparent that the facts underlying Petitioner's grounds two and four through fourteen were reasonably available to Petitioner during his state proceedings. Petitioner's assertion – that the factual predicate for his claims could not have been discovered with due diligence and that, if proven, they would show by clear and convincing evidence that no reasonable fact finder would have found him guilty – is insufficient to show either cause or actual innocence. Accordingly, federal review is barred, and Petitioner's remaining claims fail.

---

[20] At his state habeas corpus hearing, Petitioner mentioned (in regard to the hearing on the motion to withdraw his guilty plea) that counsel "didn't go over anything" and that his Boykin rights were not talked about at the hearing. [Doc. 13-5 at 8-9]. Petitioner, however, did not raise a claim in regard to ineffective assistance by counsel on appeal. (For clarity, the Court also notes that Petitioner's Boykin rights *were* discussed at the hearing on the motion to withdraw his guilty plea and that Petitioner responded affirmatively, on the record, when counsel asked if he had properly laid out Petitioner's issues. [Id. at 170-72, 175]).

**IV.**   **Motions**

Petitioner has filed a motion "in light of" the Court's favorable January 4, 2021 order and requests that "the December 2, 2019 and a February 24, 2020 letter" be placed in the record.  [Doc. 21-1].

Petitioner also has filed a second motion to appoint counsel, in which he requests appointed counsel to aid him with discovery.  [Doc. 21-1 at 2].  In his third motion to appoint counsel, Petitioner requests counsel for effective utilization of discovery procedures.  [Doc. 22 at 1-2].  Respondent opposes Petitioner's motions. [Doc. 24].

The Court observes that, on January 4, 2021, it granted Petitioner's motion for discovery, *to the extent* that he requested to place in the record two December 2, 2019 orders and a February 24, 2020 letter.  [Doc. 19 at 4].  The Court *otherwise denied* the motion for discovery.  [Id.].  Accordingly, Petitioner's motion to place certain documents in the record shall be denied as moot.  Further, Petitioner's motions to appoint counsel are due to be denied as discovery has *not* been granted and for the reasons previously stated in denying Petitioner's first motion to appoint counsel. [See Doc. 14].

27

Additionally, although not filed as a motion, in his reply, Petitioner states that additional portions of the record, including appellate briefs and transcribed minutes for grand jury proceedings, are required to review his claims of error.  [Doc. 15 at 3]. To the extent Petitioner seeks an expansion of the record, the Court finds that the current record before the Court is sufficient to determine the matters at issue, i.e., to address procedural default and to address grounds one and three (to the extent that Petitioner has shown cause for his default on those grounds).  There is no reason for an expansion of the record.

## V.    Certificate of Appealability ("COA")

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Melton v. Sec'y, Fla.

<u>Dep't of Corr.</u>, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting <u>Slack v. McDaniel</u>,

529 U.S. 473, 484 (2000)).

> When the district court denies a habeas petition on procedural grounds
> without reaching the prisoner's underlying constitutional claim, the
> prisoner in order to obtain a COA, still must show both (1) "that jurists
> of reason would find it debatable whether the petition states a valid
> claim of the denial of a constitutional right" and (2) "that jurists of
> reason would find it debatable whether the district court was correct in
> its procedural ruling."

<u>Lambrix v. Sec'y, DOC</u>, 872 F.3d 1170, 1179 (11th Cir. 2017) (quoting <u>Slack</u>, 529

U.S. at 484).

The undersigned recommends that a COA should be denied because it is not

reasonably debatable that Petitioner has failed to meet his burden under AEDPA.  If

the Court adopts this recommendation and denies a COA, Petitioner is advised that

he "may not appeal the denial but may seek a certificate from the court of appeals

under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing § 2254

Cases in the United States District Courts.

29

## VI.    Conclusion

For the reasons stated above,

**IT IS ORDERED** that Petitioner's motion to place certain documents in the record [Doc. 21-1] is **DENIED** as moot and that Petitioner's second and third motions to appoint counsel [id., Doc. 22] are **DENIED**.

It is **RECOMMENDED** that the instant petition for a writ of habeas corpus [Doc. 1-3] and a COA be **DENIED** and that the instant action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**IT IS SO ORDERED**, **RECOMMENDED**, **and DIRECTED**, this 24th day of February, 2021.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE